UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JOHN DOE AND JANE DOE, NATURAL
PARENTS, NEXT FRIEND AND DULY-
APPOINTED GUARDIANS OF JAMES DOE,
A MINOR                                                    PLAINTIFF

VS.                           CIVIL ACTION NO. 3:18CV366-TSL-LRA

KELLY PEOPLES, ADAM PEOPLES,
PEOPLES CONSTRUCTION CORPORATION,
THE TRAVELERS, NATIONWIDE PROPERTY
AND CASUALTY INSURANCE COMPANY AND
UNKNOWN INSURANCE COMPANIES 1-10                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER

In July 2017, plaintiffs John and Jane Doe, parents of the minor James Doe, filed suit in the Circuit Court of Rankin County, Mississippi, against Kelly Peoples and Peoples Construction Company seeking damages under various legal theories based on allegations that in October 2016, Kelly Peoples, then a forty-year-old adult, had sex with the fourteen-year-old James Doe. In March 2018, the Does filed the present action in the Circuit Court of Rankin County seeking a declaratory judgment that the homeowners' insurance policy issued by Nationwide Property and Casualty Insurance Company (Nationwide) to Kelly Peoples, and a commercial automobile policy issued by The Travelers/The Charter Oak Fire Insurance Company (Charter Oak) to Peoples Construction Company, provide coverage for the allegations and claims in the underlying action. In this declaratory judgment action, the Does, in addition to naming Nationwide and Charter Oak as defendants,

named Kelly Peoples, Adam Peoples and Peoples Construction Company as defendants. Nationwide and Charter Oak removed the case to this court and have now separately moved for summary judgment. Plaintiffs John and Jane Doe and each of the other named defendants have filed separate responses in opposition to these motions. The court, having considered the parties' submissions and memoranda, first concludes that it has subject matter jurisdiction based on diversity of citizenship as the Peoples defendants are properly regarded as and should be realigned as plaintiffs in this cause; and second, the court concludes that both insurers' summary judgment motions are well-taken and should be granted.

Subject Matter Jurisdiction

The Does are citizens of Mississippi, as are Kelly Peoples, Adam Peoples and Peoples Construction Company (the Peoples defendants). Nationwide and Charter Oak are nonresident insurers.[1] Thus, from the face of the complaint, it would appear that complete diversity of citizenship is lacking. See 28 U.S.C. § 1332 (district courts have jurisdiction where amount in controversy exceeds $75,000 and the matter is between citizens of different states); McLaughlin v. Miss. Power Co., 376 F.3d 344, 353 (5th Cir. 2004) (§ 1332 requires "complete diversity" which "requires that all persons on one side of the controversy be

---

[1] Nationwide is an Ohio company; Charter Oak is a Connecticut company.

2

citizens of different states than all persons on the other side.") (citation omitted). In their notice of removal, however, Nationwide and Charter Oak assert that the Peoples defendants should be realigned as plaintiffs as their sole interest in this declaratory judgment action is adverse to that of the insurers and the same as that of the named plaintiffs, i.e., establishing coverage under the subject policies for the claims in the underlying lawsuit. See Griffin v. Lee, 621 F.3d 380, 388 (5th Cir. 2010) (generally accepted test of proper alignment in this circuit "'is whether the parties with the same "ultimate interests" in the outcome of the action are on the same side.'") (quoting Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc., 723 F.2d 1173, 1178 (5th Cir. 1984) (citation omitted)); Zurn Indus., Inc. v. Acton Constr. Co., 847 F.2d 234, 236 (5th Cir. 1988) (parties' alignment for jurisdictional purposes "has to be determined from the 'principal purpose of the suit,' and the 'primary and controlling matter in dispute.'") (quoting City of Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 62 S. Ct. 15, 86 L. Ed. 47 (1941)). None of the parties herein disputes that the Doe plaintiffs and the Peoples defendants have the same "ultimate interests" in the outcome of this case or questions the propriety of the proposed realignment. However, "[s]ubject-matter jurisdiction cannot be created by waiver or consent," Howery v. Allstate Ins. Co., 243 F.3d 912, 919 (5th Cir. 2001), and thus, regardless of whether any party has objected, the court has an

independent duty to examine its jurisdiction, Simon v. Wal-Mart Stores, Inc., 193 F.3d 848, 850 (5th Cir. 1999). Here, the court has done so, and having fully considered the matter, finds that realignment of the Peoples defendants as plaintiffs is proper, both as a matter of procedure and substance.

"Federal courts are not bound by the labels the parties give themselves in the pleadings", Ashford v. Aeroframe Servs, L.L.C., 907 F.3d 385, 387 (5th Cir. 2018) (citing Zurn Indus., 847 F.2d at 236); instead, courts must "'look beyond the pleadings, and arrange the parties according to their sides in the dispute,'" id. (quoting City of Indianapolis, 314 U.S. at 69, 62 S. Ct. 15). Moreover, "[a]ny realignment of parties should take place *before* jurisdiction is decided." Id. (citing Peters v. Standard Oil Co. of Tex., 174 F.2d 162, 163 (5th Cir. 1949)).

These principles obviously apply to a case that is originally brought in federal court. However, many of the the district judges in this circuit – maybe even a majority – have rejected the use of realignment of parties to create diversity jurisdiction in a removed case. See Jackson Cty., Miss. v. Singing River Health Sys., No. 1:18CV237-LG-RHW, 2018 WL 4183216, at *3 (S.D. Miss. Aug. 31, 2018) (observing that post-removal "[r]ealignment is currently disfavored among courts within the Fifth Circuit...."); Thompson v. Gen. Motors LLC, No. 416CV00026DMB-JMV, 2016 WL 7471328, at *4 n.3 (N.D. Miss. Dec. 28, 2016) (noting that despite

4

a variance in views among district judges in this circuit as to when, if ever, post-removal realignment to create diversity is permissible, "'in a more recent trend, courts in our circuit consistently disfavor realignment after removal.'") (quoting Bilyeu v. Wells Fargo Ins. Servs., USA, Inc., No. 1:16-cv-23, 2016 WL 5721060, at *7 (W.D. La. Aug. 8, 2016)); Huntsman Corp. v. Int'l Risk Ins. Co., No. CIV.A. H-08-1542, 2008 WL 4453170, at *6 (S.D. Tex. Sept. 26, 2008) (stating that "the trend in this circuit disapproves of using realignment after removal to cure a defect in removal jurisdiction.").

The Fifth Circuit has not expressly endorsed realignment after removal to create diversity, but so far as the undersigned is aware, neither has it expressed disapproval of post-removal realignment. See Ashford v. Aeroframe Servs., LLC, No. 2:14-CV-992, 2015 WL 2089994, at *3 (W.D. La. May 4, 2015) ("The Fifth Circuit has remained silent as to whether realignment of the parties is proper in a removal action. Therefore, it cannot be said that a realignment of the parties would be contrary to law *per se.*").[2] Nearly all of the circuit courts that have directly

---

[2] Ashford v. Aeroframe Services, L.L.C., 907 F.3d 385 (5th Cir. 2018), was a removed action. The Fifth Circuit affirmed the district court's denial of a post-removal motion to realign a nondiverse defendant as a plaintiff, which realignment would have created diversity jurisdiction. The court found that diversity jurisdiction was lacking because, when the suit was first filed in state court, the interests of the plaintiff Ashford and the nondiverse defendant Aeroframe were adverse. Although it was

5

addressed the issue have approved of post-removal realignment of parties to create diversity jurisdiction.[3] Commentators have also found post-removal realignment to be permissible. See 14C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3723 (4th ed., updated Apr. 2019) ("Before determining removability under Section 1441(b) on the basis of diversity-of-citizenship jurisdiction, a district court will

---

contended that their interests had subsequently aligned, the fact that they were not adverse at the time the suit was filed meant there could be no diversity jurisdiction because, "'[c]onsistent with general principles for determining federal jurisdiction, ... diversity of citizenship must exist *both* at the time of filing in state court *and* at the time of removal to federal court.'" Id. at 386-87 (quoting Coury v. Prot, 85 F.3d 244, 248-49 (5th Cir. 1996) (emphasis added by Ashford)). The majority opinion, authored by Judge Higginson, did not opine on whether diversity jurisdiction may be achieved by realignment in a removed case, but rather stated that, "even accounting for the possibility of realignment, 'the state of facts that existed at the time of filing' failed to meet the jurisdictional prerequisite of complete diversity." Id. at 387 (quoting Grupo Dataflux v. Atlas Glob. Grp., L.P., 541 U.S. 567, 570-71, 124 S. Ct. 1920, 158 L. Ed. 2d 866 (2004)). In a concurring opinion, Judge Davis similarly wrote, "assuming that realignment is permitted to establish diversity jurisdiction upon removal, it was improper to realign Aeroframe as a plaintiff" because the proof did not demonstrate that its interest was adverse to that of Ashford. Id. at 388. Judge Jones, dissenting, was of the opinion that the parties should have been realigned by the district court according to their true and ultimate interests in the litigation, which would have created diversity jurisdiction. Id. at 389.

[3] See McCarty v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 699 F. App'x 464, 467 (6th Cir. 2017); Drew v. Safeco Ins. Co. of Ill., 578 F. App'x 954, 956 (11th Cir. 2014); Yellowbird Bus Co. v. Lexington Ins. Co., 450 F. App'x 213, 216 (3d Cir. 2011) White v. United States Fid. and Guar. Co., 356 F.2d 746 (1st Cir. 1966); Broidy v. State Mut. Life Assur. Co. of Worcester, Mass., 186 F.2d 490, 492 (2d Cir. 1951).

6

realign the parties according to their true interests in the outcome of the litigation, as it would were the case originally brought in the federal court."); id. (stating that while the law of the forum state will provide the substantive rules to govern decision in a diversity suit, "it is well-settled that, for purposes of removal, federal law determines who is a plaintiff and who is a defendant.").

Although there are surely contexts in which post-removal realignment would be improper, in the undersigned's view, there is no warrant for wholesale rejection of the device. Moreover, the court is persuaded that in the circumstances of the present case, realignment is proper, as it was in Doe v. Sharma, No. CIVA307CV172HTWLRA, 2008 WL 3339942, at *4 (S.D. Miss. Aug. 6, 2008) (removed declaratory judgment action brought by tort claimant to establish insurance coverage for underlying claim in which court realigned alleged tortfeasors as plaintiffs as they would benefit, just as would the plaintiff, if the defendant insurers were found liable for coverage for the claims in the underlying state court suit), and in Jackson HMA, Inc. v. Saint Paul Fire & Marine Ins. Co., 246 F. Supp. 2d 535, 537 (S.D. Miss. Jan. 27, 2003) (removed declaratory judgment action by decedent's medical provider concerning insurance coverage in which court realigned wrongful death claimants as plaintiffs as they shared the medical provider's interest in receiving insurance payments

related to wrongful-death claims). Consequently, the court concludes it has diversity jurisdiction over the present action.

Background Facts and the Underlying Lawsuit

According to the allegations of the underlying complaint, on July 16, 2016, James Doe, the John and Jane Does' fourteen-year-old son, broke up with Kelly and Adam Peoples' minor daughter and blocked her on Snapchat. Following the break-up, Kelly, who was forty at the time, began following James on Snapchat and communicating with him via Snapchat and cell phone. She sent him nude photographs of herself by Snapchat and cell phone and convinced him to send her nude photos of himself in return. Before long, Kelly pursued a sexual relationship with James. She picked him up from school one day and drove him to a self-storage facility near his home where she made out with him in her vehicle. Then, on three subsequent occasions, she had sex with him. The first time, she picked him up near his home and took him to her home, where she had sex with him; the second, she had him meet her at midnight at his neighborhood pool, where she picked him up, drove him to a secluded area and had sex with him in her car; and the third, she again picked him up near his home and drove him to her home, where she drank heavily, gave him shots of vodka and had sex with him. On October 16, Kelly paid James $1,000 to delete the nude photos of her from his cell phone. On October 31, 2016, James's parents confronted him, and he admitted to having had sex with Kelly.

Kelly was indicted on January 19, 2017 for statutory rape, in violation of Mississippi Code Annotated § 97-3-65(1)(a). On October 3, 2017, she pled guilty to the charge and was given a fifteen-year suspended sentence.[4] On October 27, 2017, John and Jane Doe filed suit in the Circuit Court of Rankin County, Mississippi against Kelly Peoples, and against Peoples Construction Company. As to Kelly Peoples, the Does asserted one count for negligent infliction of emotional distress and three counts for negligence *per se* based on alleged violations of Mississippi Code Annotated § 97-3-65 (statutory rape/gratification of lust), and Mississippi Code Annotated § 97-5-49 (serving alcohol to/allowing consumption of alcohol by, minor). The Does sued Peoples Construction Company (PCC) for negligent entrustment, charging that during Kelly's illicit activities with James, she drove a vehicle owned by PCC with the company's permission and consent, notwithstanding that it knew or should have known of her illicit activities.

On February 2, 2018, the Does then filed the present action in the Circuit Court of Rankin County seeking a declaratory

---

[4] In pleading guilty, Kelly admitted she was guilty of the elements of the offense, and specifically admitted that
> On, about or between the dates of the 1st of October, 2016 and the 31st day of October, 2016, [she] ... did willfully, unlawfully and feloniously have sexual intercourse with [James Doe], a male child being at least fourteen (14) but under sixteen (16) years of age ....

9

judgment that insurance policies issued by Nationwide and Charter Oak provide coverage for their claims in the underlying action.

The Insurance Policies

The Nationwide Policy:  Prior to October 2016, Nationwide issued to Kelly Peoples a homeowners' policy that was in effect in October 2016.  Adam Peoples is a named insured under the policy. Nationwide's policy includes personal liability coverage, providing in relevant part as follows:

> We will pay damages an Insured is legally obligated to pay due to an occurrence resulting from negligent personal acts or negligence arising out of the ownership, maintenance or use of real or personal property.  We will provide a defense at our expense by counsel of our choice. ...

The policy defines "occurrence" as "bodily injury or property damage resulting from an accident, including continuous or repeated exposure to the same general condition."  The policy excludes from coverage bodily injury

> a) caused intentionally by or at the direction of an insured, including willful acts the result of which the Insured knows or ought to know will follow from the insured's conduct. ...
>
> b) caused by or resulting from an act or omission which is criminal in nature and committed by an insured.
>
> c) arising out of the ownership, maintenance or use of, or loading or unloading of; entrustment or the negligent supervision by an insured of ... a motor vehicle ....
> ...
> l) resulting from acts or omissions relating directly or indirectly to sexual molestation, physical or mental abuse, harassment, including harassment, whether actual, alleged or threatened.

Nationwide denied Kelly's claim for coverage and denied her request to defend and/or indemnify and now seeks a determination via summary judgment that it has no duty to defend or indemnify as the claims asserted by the Does in the underlying action do not amount to an "occurrence" under the policy and/or are excluded from coverage under one or more of the referenced exclusions.

The Charter Oak Policy: PCC is the named insured under a policy issued by Charter Oak which includes a commercial general liability (CGL) coverage part and a commercial auto coverage part. The CGL part provides coverage for bodily injury caused by an "occurrence", which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The commercial auto form similarly provides coverage for "bodily injury" caused by an "accident", which is defined to include "continuous or repeated explsure to the same conditions resulting in 'bodily injury' or 'property damage'". Both coverage forms exclude from coverage bodily injury "expected or intended from the standpoint of the insured." Charter Oak contends it is entitled to summary judgment because, as a matter of law, its policy provides no coverage and/or excludes coverage for the claims asserted by the Does in the underlying action.

Duty to Defend/Indemnify

Mississippi has adopted the allegations of the complaint rule, by which "the determination of whether an insurance company

11

has a duty to defend depends upon the language of the policy as compared to the allegations of the complaint in the underlying action." Minnesota Life Ins. Co. v. Columbia Cas. Co., 164 So. 3d 954, 970 (Miss. 2014) (citations omitted); Travelers Indem. Co. v. Mitchell, 925 F.3d 236, 240 (5th Cir. 2019) (under Mississippi's "so-called eight corners rule", question whether insurer has duty to defend insured against claim "is resolved by comparing the four corners of the policy with the four corners of the complaint) (citation omitted). "An insurance company's duty to defend its insured is triggered when it becomes aware that a complaint has been filed which contains reasonable, plausible allegations of conduct covered by the policy. However, no duty to defend arises when the claims fall outside the policy's coverage." Baker Donelson Bearman & Caldwell, P.C. v. Muirhead, 920 So. 2d 440, 451 (Miss. 2006). When reviewing a complaint to see whether it states a claim that is within or arguably within the scope of the coverage provided by the insurance policy, "the court compares the words of the complaint with the words of the policy, looking 'not to the particular legal theories' pursued by the plaintiffs, 'but to the allegedly tortious conduct underlying' the suit." Acceptance Ins. Co. v. Powe Timber Co., Inc., 403 F. Supp. 2d 552, 554 (S.D. Miss. 2005) (quoting Ingalls Shipbuilding v. Federal Ins. Co., 410 F.3d 214, 225 (5th Cir. 2005)). See also Acadia Ins. Co. v. Pearl River Cmty. Coll., 237 F. Supp. 3d 437, 440

12

(S.D. Miss. 2017) (insurer has duty to defend complaint which contains allegations covered by the language of the policy, independent of its duty to indemnify, which is determined once the facts have been developed to establish whether the conduct of the insured giving rise to the claim falls under or outside the coverage afforded by the policy) (citing Moeller v. Am. Guar. & Liab. Ins. Co., 707 So. 2d 1062, 1069 (Miss. 1996)).

"The interpretation of an insurance policy is a question of law for the court when the meaning of the terms is clear and unambiguous." Shelter Mut. Ins. Co. v. Simmons, 543 F. Supp. 2d 582, 585 (5th Cir. 2008). See Hinton v. Pekin Ins. Co., 268 So. 3d 543, 551 (Miss. 2019), reh'g denied (May 9, 2019) ("'[T]he interpretation of an insurance policy is a question of law, not one of fact.'") (quoting Minn. Life, 164 So. 3d at 967). Therefore, summary judgment in favor of an insurer usually will be appropriate if the allegations of the underlying complaint do not state a claim that is within or arguably within the coverage of the subject policies. Audubon Ins. Co. v. Stefancik, 98 F. Supp. 2d 751, 754–55 (S.D. Miss. 1999).

### There Was No "Accident" or "Occurrence"

Numerous Mississippi cases and cases applying Mississippi law have addressed the meaning of the terms "occurrence" and "accident" in insurance policies, and the law is clear: "[I]ntentional acts do not constitute an 'occurrence' under

13

policies which define 'occurrence' as an accident." <u>Maryland Cas. Co. v. Lab Disc. Drug, Inc.</u>, 468 F. Supp. 2d 862, 865 (S.D. Miss. 2006). Under such policies, "there is no 'occurrence' ... if the harm for which recovery is sought from the insured resulted from an insured's intentional or deliberate actions, even if the insured did not intend such harm." <u>Acceptance Ins. Co.</u>, 403 F. Supp. 2d at 555. Thus, coverage "does not extend 'to injuries unintended by the insured but which resulted from intentional actions of the insured' even if those actions were not intentionally tortious but rather only negligent. If the acts themselves were not accidental, even if they may have been negligent, then there is no 'occurrence.'" <u>Id</u>. See <u>United States Fidelity & Guarn. Co. v. Omnibank</u>, 812 So. 2d 196, 197 (Miss. 2002) (holding that "an insurer's duty to defend under a general commercial liability policy does not extend to negligent actions that are intentionally caused by the insured," or, stated another way, that "even if an insured acts in a negligent manner, that action must still be accidental and unintended in order to implicate policy coverage"); <u>Allstate Ins. Co. v. Moulton</u>, 464 So. 2d 507, 510 (Miss. 1985) (holding that in determining whether there had been an occurrence, "[t]he only relevant consideration is whether, according to the declaration, the chain of events leading to the injuries complained of were set in motion and followed a course consciously devised and controlled by [the

14

insured] without the unexpected intervention of any third person or extrinsic force").

Nationwide and Charter Oak argue that all of Kelly Peoples' alleged actions that form the basis for the Does' claims in the underlying action were intentional, not accidental and that consequently, there was no "occurrence" or "accident" and hence no coverage, or potential coverage, under any of the policies at issue for the claims in their lawsuit.

The Does' Response: For their part, the Does assert that Kelly's "initial actions with James" were "innocent, benign and friendly"; she only wanted to befriend James in the hope that he would get back together with her daughter. Kelly's actions, they say, "were unintended inasmuch as she had no intent of the relationship with James exceeding anything beyond friendship and she certainly intended no harm to befall him." The Does acknowledge, of course, that despite Kelly's purported initial innocent intentions, the relationship "changed from an ill-advised but still platonic and friendly one, to an illicit one". But they submit that this was not something she planned or expected and was instead "purely accidental" and unintended. See Moulton, 464 So. 2d at 509 (defining "accident" as "anything that happens or is the result of that which is unanticipated and takes place without the insured's foresight or anticipation"). The Does' position is patently without merit. As the insurers note, the Does have not sued Kelly because she "befriended" James. They have sued her and

15

sought an award of damages against her because she *intentionally – not accidentally* – pursued James, sent him nude photographs of herself, convinced him to send her nude photographs of himself, had sex with him on several occasions and gave him alcohol. In short, they have sued her because she "entered into an illicit relationship with James Doe, and had sex with him."

Kelly Peoples' Response: Kelly contends there is a genuine issue of material fact as to whether her actions were intentional or accidental for these reasons: she did not intend to harm James; she was not convicted of an intent-based crime; and the Does have specifically pled causes of action grounded in negligence.[5] Her arguments are also without merit.

Although it is true the Does have purported to assert causes of action against Kelly for *negligent* infliction of emotional distress and *negligence per se,* as stated *supra*, it is the facts alleged, not the characterization of those facts, that determine whether there is any potential for coverage. See Maryland Cas. Co., 468 F. Supp. 2d at 866 (concluding that "all the claims, *regardless of how characterized*, stem from allegations of intentional, i.e., not accidental, sexual misconduct by [the insured] and therefore do not involve a covered occurrence") (emphasis added); see also Employers Mut. Cas. Co. v. Raddin, No.

---

[5] Adam Peoples has filed a separate response in opposition to Nationwide's motion in which he adopts by reference the arguments contained in Kelly's response.

16

5:10-CV-137 DCB RHW, 2012 WL 1098624, at *8 (S.D. Miss. Mar. 30, 2012) (stating that "it is the facts alleged, not the pleader's legal conclusions, that are relevant to the insurer's duty to defend," and thus, because "the underlying allegations of 'negligence' [did] not correspond with any factual allegation of accidental conduct" but instead "strictly related to" intentional acts, there was no "occurrence").

All of the Does' factual allegations in support of their claims involve manifestly intentional acts on Kelly's part. And, since Kelly's actions were intentional and not accidental, then there was no "occurrence", regardless of whether she intended to harm James.[6] See Lambert v. Safeco Ins. Co. of Am., 87 So. 3d 1123, 1126 (Miss. Ct. App. 2012) (holding that insured's actions were not an accident and thus not an "occurrence" under the subject policy irrespective of intent to harm); Moulton, 464 So. 2d at 510 (holding that "the term accident refers to [the insured's] action and not whatever unintended damages flowed from that act"). In any event, Mississippi law regards "sexual abuse [as] an inherently injurious act as to which the law will infer intent. Thus, regardless of how the allegations are worded in a particular complaint, sexual abuse will be considered intentional conduct." Raddin, 2012 WL 1098624, at *9 (citing American

---

[6] Though it would be immaterial, the court does note that Kelly has offered no evidence that she did not intend to harm James.

17

Manufacturers Mut. Ins. Co. v. Stallworth, 433 F. Supp. 2d 767, 772 (S.D. Miss. 2006)); Am. Nat. Gen. Ins. Co. v. L.T. Jackson, 203 F. Supp. 2d 674, 684 and n.15 (S.D. Miss. 2001), *aff'd*, 37 Fed. Appx. 714, 2002 WL 1220663 (5th Cir. 2002) (observing that "the Mississippi Supreme Court has implicitly recognized that there are some inherently injurious acts, such as sexual abuse, as to which the law will infer an intent to injure", and noting further that "[c]ourts have concluded virtually unanimously that an inference of intent to harm will be inferred as a matter of law where there are allegations of sexual misconduct toward children.").

Peoples Construction's Response: In its response to Charter Oak's motion,[7] PCC asserts, among other arguments, that even though *Kelly*'s alleged actions may have been intentional, *its own alleged actions* were not. That is, the claim against it is for negligent entrustment, and the facts in support of that claim do not suggest intentional acts. However, the Fifth Circuit recognized in American Guarantee and Liability Insurance Co. v. 1906 Co., that courts had repeatedly held that

> no coverage is provided the employer or supervisory personnel for claims of negligent hiring or supervision when the underlying tortious conduct is intentional and when those claims against the employer or supervisor are related to and are interdependent on the employee's intentional misconduct....

---

[7] PCC is the named insured under the Charter Oak policy; it is not insured under, and has no interest in Nationwide's homeowners' coverage.

18

129 F.3d 802, 809 (5th Cir. 1997). It went on to predict that Mississippi courts would likely also hold that

> where negligence claims against an employer, such as negligent hiring, negligent training, and negligent entrustment, are related to and interdependent on the intentional misconduct of an employee, the "ultimate question" for coverage purposes is whether the employee's intentional misconduct itself falls within the definition of an occurrence.

Id. at 810.

PCC also argues that it cannot be held liable to the Does in the underlying action because, contrary to the Does' allegations, it did not own the vehicle Kelly People used when committing the alleged intentional acts, and instead, the vehicle she used was her own personal vehicle, and further, Kelly was not an employee or principal of PCC and was not otherwise under the control of PCC. Mississippi law does recognize an exception to the "allegations of the complaint rule", "which holds that an insurer has a duty to defend when presented with extrinsic facts, ... that *trigger coverage under the policy*." Mulberry Square Prods. v. State Farm Fire & Cas. Co., 101 F.3d 414, 422 (5th Cir. 1996) (emphasis added).[8] However, if the "true facts" "would not support a claim for liability against the insured, then knowledge of these facts by the insurer does not give rise to a duty to defend." Acceptance Ins. Co., 403 F. Supp. 2d at 559. The "true

---

[8] Kelly Peoples also references the "true facts" exception in her response, but she does not suggest how it is even arguably pertinent.

19

facts" claimed by PCC would not support a claim for liability by PCC and would not trigger coverage.[9]

Exclusions

Both insurers argue that the Does' claims fall within various exclusions in their respective policies. While one or more of the referenced exclusions are clearly applicable to the Does' claims, it is unnecessary to address the exclusions as it is apparent that the policies' coverage provisions do not extend to the claims asserted by the Does in the underlying actions.

Conclusion

Based on the foregoing, it is ordered that the Peoples defendants are realigned as plaintiffs; and it is further ordered that the motions for summary judgment by the defendant insurers are granted.

A separate judgment will be entered in accordance with Rule 589 of the Federal Rules of Civil Procedure.

SO ORDERED this 1st day of July, 2019.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

---

[9] PCC has argued that any ruling by the court granting Charter Oak's motion for summary judgment ought not be binding on PCC inasmuch as Charter Oak has not filed a pleading asserting a claim against PCC for declaratory judgment and PCC has not filed a pleading asserting a claim against Charter Oak for coverage, in this action or otherwise. However, the Does have made such a claim; and PCC, as a party to this action, has been afforded the opportunity to address the coverage issues presented, and in fact has done so.

20